IN THE MATTER OF BOMANJEE BYRAMJEE COLAH, A LUNATIC.

(Decided December 31st, 1875.)

Where a lunatic, who was a Parsee merchant and a native of India, and who had become insane while in this country, and of whose person and estate a committee had been appointed, had been sent home to India, and a committee of his person and estate appointed by the Indian courts, this court refused to order the estate to be turned over to the committee of the estate in India, being satisfied on examination of all the circumstances of the case, that it was not for the benefit of the lunatic that it should be done.

In such a case the surrendering of the control of the lunatic's estate is in the discretion of the court, and it will not surrender it unless it is clearly for the advantage of the lunatic that it should be done.

APPEAL from an order of this court made at special term. The following opinion, in which the facts of the case are fully stated, was delivered at special term, by

VAN BRUNT, J.—Bomanjee Byramjee Colah is a Parsee, a native of the East Indies, and prior to the year 1870 a resident of Bombay, where he has a wife and children and other relatives.

In the Matter of Bomanjee Byramjee Colah, a Lunatic.

In the year 1870, Colah left Bombay, taking with him large sums of money which were his property, and after traveling through various foreign countries arrived in New York city.

It having been made apparent by the conduct of Colah that he was laboring under insanity, proceedings were instituted in this court to ascertain whether or not Colah was insane, and if so, to have proper committees of his person and estate appointed.

Upon an examination being had, it was ascertained and adjudged that Colah was a lunatic, and committees of his person and estate were duly appointed.

Of the property of said Colah, the said committee of his estate succeeded in securing about one hundred thousand dollars.

In the year 1871, the wife and father-in-law of Colah made an application to this court to have the said Colah sent back to Bombay, where his family and relatives lived, basing the propriety of such transfer upon the ground, amongst others, that Colah's chances of recovery would be greatly improved thereby.

Chief Justice DALY, after having with the greatest care examined the question as to the power of the court to make such transfer, and also as to its beneficial effect upon the lunatic, made an order directing the committee of the person of Colah to take him to Bombay, and upon his arrival at Bombay to place him in a lunatic asylum there. The said committee was also directed upon his arrival at Bombay to immediately notify the wife and relatives of Colah of his presence there, and if they or some one of them did not apply for the appointment of a committee of his, Colah's, person, at the earliest possible period, the said committee appointed by this court was instructed to make application himself to the proper judicial tribunal or judge, and to bring back with him duly authenticated evidence of the appointment of such committee, and of the asylum or institution in which Colah was placed.*

By virtue of that order, Colah was taken out of the United States, and under the supervision of his said committee was removed to Bombay, and upon the application of the wife of said

---

* See *Matter of Colah*, 3 Daly, 529, 542

lunatic, and of Framjee Dooabhoy C. Wadia, his father-in-law, the High Court of Judicature at Bombay appointed a committee of the person of the said Colah, and appointed Henry Gamble, the petitioner, committee of his estate.

The said Henry Gamble authorized and empowered by power of attorney, Brown Bros. & Co., bankers of the city of New York, to receive the said estate in the hands of the committee appointed by this court, as the agents and attorneys of said Gamble.

The said Brown Bros. & Co. thereupon, through their counsel, caused an application to be made to this court for an order directing the committee of the estate of said Colah appointed by this court to pay over to them, as the agents of said Gamble, the moneys and effects of said Colah which he has in his hands as such committee.

The question presented by this application is a novel one, and there seems to be no precedent which can be referred to as indicating the course proper to be pursued. The case of *Re Garnier* (1872), 13 Eng. Eq. Rep. 522, has been cited as tending to throw light upon this question, but it does not seem to reach the principles involved in this proceeding.

In the opinion given in that case many authorities are cited and decisions referred to, but all of them will be found upon examination to differ in their principal features from the case now under consideration.

Those cases, however, seem to establish the principle that all applications of the character of the present one are addressed to the court as a matter of comity, and not of right—as a matter of comity, not between individuals, but as between courts; they also show how careful the court should be in the exercise of a right so novel and unusual.

It is also to be observed, as far as reported decisions inform us, that never before has an application been made to a court for the transfer to an appointee of another judicial tribunal in a foreign country, of property which has come into its possession and custody, as a consequence of the custody of the person of the owner of that property having devolved upon it.

In all the cases to which my attention has been directed, the

In the Matter of Bomanjee Byramjee Colah, a Lunatic.

application has been made to have property in the hands of individuals of one country transferred to the committee of the estate of a lunatic appointed in another country in which the lunatic was then living, and where the lunatic was a citizen of the country where the property was situated, such applications have been refused ; but in those cases in which the lunatic was a resident of the country in which he was adjudged a lunatic, courts have, as a matter of comity, upon due proof being made of the regularity of the appointment of the committee of the estate of the lunatic, and that a proper security had been given, directed the transfer by the individuals holding property of the lunatic, of such property to such committee of his estate.

The question seems to have been, whether an accidental custodian, so to speak, of the property of a lunatic, should have control thereof, or whether the same should be transferred to a person duly appointed by a competent court to take the charge of the property of the lunatic during such time as he should remain incompetent to do so.

It is unfortunate that most of the cases are reported so meagrely that it is impossible to gather from them the precise facts which were the subject of consideration by the court in coming to the conclusion which it did.

As I have already said, it seems to have been conceded in every case, that the granting of the application was a mere matter of discretion, depending upon the peculiar facts of each case, and that the court should be scrupulously careful to see that the granting of the application was for the advantage of the estate of the lunatic, and that it could not thereby suffer any loss, and that due proof should be required of every fact which it is necessary should exist to secure that end.

I do not think it at all necessary to consider the expediency of directing a transfer of the property to a committee of the estate in Bombay, nor to discuss the power of the court to make such a direction, because the proof made upon this application falls entirely short in its precision and definiteness of that which the most ordinary care and prudence would require—in fact there is no proof whatever of any fact which could for a moment justify this court in granting this application.

I will briefly point out some of the respects in which it seems to me that the proof entirely fails.

First. There is no legal proof whatever that it was within the jurisdiction of the High Court of Judicature of Bombay to appoint the petitioner the committee of the estate of Colah.

Second. There is no proof that the proceedings, an authenticated copy of which is on file in this court, are regular in form and according to the practice of the court in India.

Third. There is no proof as to the condition of the estate of Colah in India, as to which it is very essential that the court should be informed, in order that it may determine whether such security has been given by the committee of the estate there as would justify this court in placing in his possession the funds and property of the lunatic now in its hands here.

Fourth. There is no evidence that the petitioner has given any security whatever for the faithful performance of his duties as committee of the estate of Colah.

Fifth. There is no evidence that the court in Bombay, in its appointment of the petitioner as the committee of the estate of Colah, in Bombay, knew that there was so large a sum of money in the hands of the court here, and that such sum might come into the hands of the petitioner.

Sixth. There is no evidence to show that this application was made with the assent of, or by the authority of the court at Bombay; and as this application is to be treated as a question of comity between courts, it is certainly proper that the individual who claims to act for, and represent upon this application, the court at Bombay, should furnish this court with some evidence that he is the accredited representative of that court for the purpose of presenting its application to this court. There may be also another question as to the right of an attorney in fact to make this application, and whether the petitioner can act as the committee of the estate through an attorney in fact.

It may be said that in this case some of the requirements which I have suggested are not only onerous, but useless, as the court may be morally convinced of the facts, although there is no legal evidence to support such conviction. The answer which I would make to this is, that no court has the right to

dispose of the property of others, which has been confided to its custody, upon moral convictions. It can only act upon legal proof, and that only. The moment a court departs from this plain rule, it involves itself in uncertainty and doubt, and sets a precedent which, in some other case, may work irreparable injury.

There is not one of the requirements as to proof which I have suggested but which could be easily shown to be necessary in cases which would very naturally arise.

I will not attempt to enter upon a detailed examination of each of the points of proof which I have suggested, because they are supported either by the most elementary principles of evidence, or are obviously necessary in order that the court may at all intelligently exercise its judicial discretion.

By the act of Colah himself, in bringing his person and estate within its jurisdiction, this court has been clothed with this trust; and it is its duty, in exercising the power of divesting itself of such trust, to see that every precaution is taken to prevent any waste happening to the estate.

It is possible, upon proof being made as to the condition of the estate of Colah in India, and a proper certificate being obtained from the court there, showing what amount is necessary, in addition to the property in India, for the support of the lunatic and his family, for this court to direct that so much of the income of the estate here as should be required for that purpose, be remitted to Bombay; so that there are no reasons why undue haste should be made, and salutary principles sacrificed.

There cannot be too much caution used in the exercise of the extraordinary powers of the courts, which are invoked in aid of this application.

The motion must therefore be denied.

An appeal was taken to the court at general term.

*James P. Lowrey,* counsel for Henry Gamble, committee.

*Stephen A. Walker,* counsel for Heera Baae, committee and wife.

In the Matter of Bomanjee Byramjee Colah, a Lunatic.

CHARLES P. DALY, Chief Justice.—I see no reason why we should reverse the decision of Judge Van Brunt refusing to order that the property of the lunatic now in the custody of the committee appointed by this court should be transferred to Bombay, and placed in the custody of the petitioner.

What the petitioner asks is not a matter of right, but purely a matter of discretion (*In re Garnier* (1872), 13 Eng. L. R. Eq. 582); and this court ought not to surrender up the property which is now in its charge, and transfer it to Bombay, unless thoroughly satisfied of its security if so transferred, and that the transfer would be for the lunatic's benefit. So far as we have been informed, it constitutes the whole of the property or estate of Colah. It amounts to a very large sum of money, and we must act with great caution, that we may do nothing that will imperil the principal, or impair the economical administration of the fund.

Colah was found insane in this city in 1870, with a large amount of property in his possession, consisting chiefly of money. At the instance of the British consul, proceedings were instituted in this court to inquire into his sanity, and for the preservation of his property, if he should be found to be bereft of reason. He was found to be insane. His property was with considerable difficulty secured; a large part of it being, in fact, rescued through the vigilance of Mr. Jarvis, who was appointed by this court the committee of his estate. He was wholly unknown here; and it was through inquiries set on foot by Mr. Jarvis amongst the Parsees resident in London that it was, after considerable effort, ascertained that he belonged to Bombay, and had a wife and children and relatives there. When information was sent to Bombay respecting him, it was almost immediately followed by his father-in-law coming to this city, who at once petitioned this court that the custody of Colah should be intrusted to him, and that his property should be placed in the father-in-law's hands, that he might return with both to Bombay. After careful inquiry, we refused his application; and from information afterwards obtained we were satisfied that we had acted judiciously in so doing. Subsequently, after a medical examination by four eminent phy-

sicians, we consented to send Colah to Bombay, in the some-
what remote hope that the return to his native city, and the
presence of his wife, children, and relatives, might have a
favorable effect upon his malady. We removed him from an
institution in the vicinity of this city exclusively devoted to
the care and treatment of the insane, and where he had the
benefit of whatever modern experience has devised and put in
use for the medical treatment of those in his condition. We
did this upon the assurance and in the full expectation that,
upon his arrival in Bombay, he would be placed in charge of a
like institution there; an assurance for which there was no
foundation, there being no institution of the kind in Bombay
or its vicinity. In doing this a very heavy expense was in-
curred, which had to be paid out of his estate; by which re-
moval, as it would seem, we did him no particular benefit,
whilst we considerably diminished his estate by the expense
incurred, which embraced not only the large cost of his trans-
port, but allowance to the lawyers who appeared for the various
parties in interest in the course of the proceeding, and other
incidental charges.

We instructed Mr. Constable, to whose care we committed
him, to place him in a lunatic asylum in Bombay, and to apply
to some competent court there for the appointment of a com-
mittee, if no application for one should be made by his wife or
relatives (*In the Matter of Bomanjee Byramjee Colah*, 3 Daly,
529).

His wife and father-in-law did apply to the High Court of
Judicature at Bombay, which took evidence as to Colah's in-
sanity, adjudged him to be a lunatic, and appointed the wife,
the father-in-law, and a graduate of a medical college in Bom-
bay, the committee of his person; and Henry Gamble, Esq.,
the official assignee of the court (as I understand it) in and for
the relief of insolvent debtors, who is the present petitioner, the
committee of his estate.

When the application was first made to me for the removal
of Colah, I said that if the court should decide to remove him
to Bombay, and if, after his arrival there, a committee should
be appointed by a competent legal tribunal there to take charge

of his person and estate, this court would entertain an application to surrender the further custody and control of his property to the tribunal or other competent authority that might be entitled by the law of the Presidency of Bombay to have the custody and control of it.

No application has been made to us by any legal tribunal in Bombay, nor is there anything before us to show what the law of the Presidency of Bombay is as to the tribunal or tribunals that have the custody of lunatics and of their estates. The judicial record of the adjudication of Colah's insanity, and of the appointment of Mr. Gamble, the petitioner, as the committee of his estate purports to be in the matter of Act XXXIV, of 1858, of the legislative council of India, entitled "An act to regulate proceedings in lunacy in the courts of judicature established by royal charter," but what this law enacts nowhere appears. The application is not made to us by the court itself. It is not the result of any deliberation on the part of the court, ending in any expression of opinion or request on its part, or anything officially addressed to us by it, which, as matter of comity, we ought respectfully to consider, giving due weight to any reasons assigned by the court why the estate should be transferred from us to it, and complying with its official request if it be right and proper that we should do so. We shall assume that any tribunal so applying to us would proceed upon the rule uniformly acted upon by judicial tribunals in this country and in Great Britain, that such disposition in respect to the care and custody of a lunatic's estate pending his aberration of mind, is to be made, as will most conduce to its safety and economical administration ; and that the court, in making such a request, would lay before us the reasons which, in its judgment, warranted the conclusion that the removal of the property to Bombay would be desirable. If it is well and safely invested by the tribunal of the country that first acquired jurisdiction of the person and property of the lunatic, and that tribunal, following its ordinary modes of procedure, is able to administer it judiciously and economically, it does not necessarily follow that because it transfers the person of the lunatic to another country, in the hope that a sea voyage, a change of climate, or the in-

In the Matter of Bomanjee Byramjee Colah, a Lunatic.

fluence of former associations, may have a beneficial effect, and possibly lead to a restoration of his reason, that it should transfer the estate also. Where a stranger, of whose person and property the court has, as in this instance, acquired the custody, is sent by it to his native country, and there is great probability, from the hopeless state of his malady, that he will continue there during life, the court would transfer the custody of his property to a legal tribunal there, if well assured that the property under the control of that tribunal would be equally safe, and be as well, or more, economically administered than here. This is not what we are asked to do in the present instance. We are asked to transfer the whole of Colah's property to the petitioner, Mr. Gamble, who has been appointed committee of his estate in Bombay by a court, of whose jurisdiction and mode of procedure, we know nothing. The property which Colah brought with him to this country, was, after a great deal of trouble and difficulty, as I have said, secured and brought under the control of this court. We have had numerous proceedings before us, involving a great deal of discussion on the part of the various counsel who have appeared before us in the interest of different parties, and a great deal of investigation on our part, which has led to a very considerable expense, which, together with the very heavy expense of Colah's transport to Bombay, had to be paid out of the estate, until all matters in litigation respecting it had been adjusted and settled, so that nothing now remains to be done except to transmit annually to Bombay the small amount sufficient for the support of Colah, and of his wife and children. The estate, in our hands, has all been carefully invested upon real estate security in this city, by bonds and mortgages, yielding an annual income of seven per cent., as large an amount, in my judgment, as can probably be obtained upon it in any country, with a view to the undoubted security and safety of the principal. All this we are asked to disturb; to convert the entire estate into money, and hand it over to a respectable commercial house in this city, that Mr. Gamble, the petitioner, has authorized to receive it, to be transmitted to him in Bombay, and for no other reason, except that he wants the custody of it. We know nothing of Mr. Gamble, except what

appears in his appointment, that he is, at Bombay, the official assignee of the court, in the estates of insolvent debtors. We know nothing of his pecuniary responsibility; whether he has given any official bond or other security for the moneys which may come into his hands, or any bond or security of any kind for the large amount of money of which we are requested to give him the exclusive custody. We are asked to presume that the court had jurisdiction to appoint him, and also to presume that he has given full and ample security for any responsibility he may incur, if we should place this large amount of money in his hands. We will presume nothing, especially in view of our past experience in acting upon the assurance that there was a large and well conducted lunatic asylum in Bombay. Courts of equitable cognizance, upon whom the duty is imposed of taking charge of the estates of infants, lunatics, or other helpless persons, exercise a very sacred trust, which they ought not, and will not relinquish, no matter what labor or duty the trust may impose, by transferring it to another tribunal or body, except upon the fullest and most satisfactory assurance that they can do so with entire safety, and with the confidence that the trust will be, in all respects, as well, carefully, and economically administered as they could administer it. We would not transfer the estate of a lunatic, of whose person and estate we, in the first instance, acquired jurisdiction, to a tribunal in one of our States, except upon the fullest assurance of this kind; much less to an official person in one of the colonial dependencies of Great Britain, in India, of whose laws, of whose tribunals, or their mode of procedure, we know nothing judicially. The very loose manner in which this application is made impresses us unfavorably, and we can see nothing, except a saving of the very slight expense involved in the transmission of the small sum of money to Bombay, annually, for the support of Colah and his family, that could be gained by granting the application. None of the cases upon which the counsel for the petitioner rely, are analagous to the one now before us.

In *Newton* v. *Manning* (1 Mac. & Gord. 362), the application of the wife for a certain sum of money, standing to the credit of her lunatic husband, in England, was refused by the

In the Matter of Bomanjee Byramjee Colah, a Lunatic.

Lord Chancellor, although she was the tutrice of the lunatic in France, because the court did not know that, by the laws of France, she was entitled to receive it, and to deal with it in the manner proposed in her petition; the court remarking that she had only to arm herself with the authority of the foreign jurisdiction, and that the money would be paid out to her as to any party showing title.

In the *Matter of Margaret Stark* (2 Mac. & Gord. 174), a lunatic residing in Scotland, the Lord Chancellor refused the application of the curator in Scotland to transfer stock to him, standing at the lunatic's name, in the Bank of England, not being satisfied that the security given by him in Scotland was sufficient; the Lord Chancellor holding that it was entirely a matter of discretion to refuse or to accede to the application.

In the *Matter of Elias* (3 Mac. & Gord. 234), the curator appointed, according to the law of Holland, for a lunatic resident there, applied to the court for the transfer to him of a considerable amount of bank and East India stock of the lunatic in England. The Chancellor granted the application, as the report says, with some hesitation, upon the assumption that surety was not required of the curator by the laws of Holland, intimating that he should have had no difficulty, if it had been been shown in the case that the lunatic was a Dutch subject. The Lord Chancellor, in this case, went very far, and may probably have felt the less hesitation in complying with the request to transfer the property to the curator in Holland, a country that has long been noted for the care, economy and probity with which the estates of orphans and other helpless persons are administered there by the official persons that have them in charge.

In the first of these cases, the court put its refusal, as we do, upon the ground of its want of knowledge of the laws of the country where the lunatic was, and as the tutrice of her lunatic husband in France it allowed her only the future income of the amount in court, retaining the corpus. In the second case, the court refused, because the security given by the curator in Scotland was not adequate, and because *no reason was assigned for the transfer*. In the last case, a previous Lord Chancellor

(Lord Cottenham) referred it to the master to report whether the petitioner was, as curator, entitled by the law of the kingdom of the Netherlands to have the funds transferred to him, and the master reported that he was. No inquiry was directed as to whether he had given any security, and as no report was made upon that subject, and as the report was that the petitioner was entitled to ·the funds by the laws of Holland, Lord Truro assumed that no security was required by the laws of that country, and therefore made the order. It was not, moreover, like this case, one where the court had originally acquired jurisdiction of the person and estate of the lunatic. It is eminently proper that the tribunal of the country where the lunatic is, when he is deprived of reason, and which has imposed upon it the charge of his person and estate, should receive, as a matter of comity, money or securities belonging to him in foreign countries, as it has the whole charge and care of his estate. The three cases above referred to were all cases in which the application was upon this ground, and were under an English statute (1 Will. 4, c. 65, sec. 34), one of the provisions of which provides for such cases by empowering the Lord Chancellor, in his discretion, to order stock belonging to the lunatic in England to be transferred to a curator or other person ·in whom it is vested, according to the laws of the place out of England where the lunatic resides; which is a very different case from the one now before us. Colah's estate is vested in the committee appointed by this court, after it had acquired jurisdiction of his person and of his estate. When Colah, by our direction, was transferred to Bombay, a committee of his estate was appointed there, and the question before us is whether we will transfer his estate, which has hitherto been administered, and finally adjusted and settled here under our direction, to the committee in Bombay; our answer to which is that we will not, without some better assurance in respect to its future care, security and administration there than has been presented to us upon this application.

If he should be restored to reason, our trust will be at an end, and his property will be delivered to him; and if he should

not recover, then, upon his death, it will be delivered to those who are lawfully entitled to it.

LOEW, J., concurred.

Order affirmed.